## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DONNA HALL-LOPEZ**

     **Plaintiff,**

     **v.**

     **Case No. 2:20-cv-02017-HLT**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**

     **Defendant.**

### MEMORANDUM AND ORDER

This is an insurance breach-of-contract action brought by Plaintiff Donna Hall-Lopez against her insurer, Defendant State Farm Mutual Automobile Insurance Company. Plaintiff alleges Defendant breached its contract by failing to pay her benefits under the policy. Defendant moves for summary judgment on grounds that Plaintiff cannot maintain a breach-of-contract claim because Plaintiff failed to comply with her duties under the policy. Doc. 66. For the reasons discussed below, the Court finds that Plaintiff failed to comply with the terms of the policy and Defendant has been prejudiced as a result. Accordingly, the Court grants Defendant's motion.

### I.       BACKGROUND

The Court considers the following uncontroverted facts for purposes of summary judgment. Defendant issued a policy to Plaintiff that provided coverage for underinsured motorist ("UIM") benefits. The policy was in effect on January 16, 2018, when Plaintiff was allegedly injured in an accident in Kansas City, Kansas.

The policy contains several provisions regarding uninsured-motorist claims, which include procedures and duties of the insured before legal action is initiated. Under the provision of the

policy headed "UNINSURED MOTOR VEHICLE COVERAGE,"[1] the policy discusses "Deciding Fault and Amount." It states:

> 1. a. The insured and we must agree to the answers to the following two questions:
>
>    (1) Is the insured legally entitled to recover compensatory damages from the owner or driver of the uninsured motor vehicle?
>
>    (2) If the insured and we agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the insured is legally entitled to recover from the owner or driver of the uninsured motor vehicle?
>
>    b. If there is no agreement on the answer to either question in 1.a. above and the insured chooses to seek resolution of the claim under this policy, then the insured shall:
>
>    (1) file a lawsuit, in a state or federal court that has jurisdiction, against any or all of the following:
>
>    (a) us . . . .

Doc. 67-1 at 18 (italics omitted).

Under a provision headed "INSURED'S DUTIES," it states, "The insured must cooperate with us and, when asked, assist us in . . . securing and giving evidence . . . ." *Id.* at 28 (italics omitted). For purpose of certain claims, including claims for uninsured-motorist coverage, the person making the claim must "provide written authorization" for Defendant to obtain medical bills and medical records. *Id.* at 29 (italics omitted).

Finally, under the heading "GENERAL TERMS," the policy contains the following provision:

> 13. Legal Action Against Us

---

[1] Although Plaintiff seeks UIM benefits, as opposed to uninsured-motorist coverage, neither party argues this distinction matters for purposes of these provisions.

> Legal action may not be brought against us until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against us regarding:
>
> . . .
>
> c.  Uninsured Motor Vehicle Coverage if the insured or that insured's legal representative within five years immediately following the date of the accident:
>
>> (1) presents an Uninsured Motor Vehicle Coverage claim to us; and
>>
>> (2) files a lawsuit in accordance with the Deciding Fault and Amount provision of the coverage.
>
> Except as provided in c.(2) above, no other legal action may be brought against us relating to Uninsured Motor Vehicle Coverage for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled Consent to Settlement and Deciding Fault and Amount.[2]

*Id.* at 33 (italics omitted).

On March 25, 2019, Plaintiff's counsel sent a packet of materials to Defendant for review, including medical records and billing statements, along with a letter promising to provide updated records and bills later. On April 25, 2019, Plaintiff's counsel sent two letters to Defendant. One letter indicated that the other driver's insurance provider had offered the liability coverage limit of $25,000 to settle Plaintiff's negligence claim and asked whether Defendant would agree to her accepting that officer. The letter also stated that this amount was insufficient to cover Plaintiff's damages, and thus Plaintiff's counsel noted that "as soon as my client finishes treating, we will be

---

[2]  "Consent to Settlement" refers to a section in the "UNINSURED MOTOR VEHICLE COVERAGE" section of the policy that requires the insured to give written notice to Defendant of any tentative settlement agreement on behalf of the owner or driver of an uninsured motor vehicle, and allows Defendant to consent to such settlement. Doc. 67-1 at 17. As described, Plaintiff apparently provided such notice regarding a proposed settlement by the other driver's insurance company and Defendant consented to it.

making a claim against that policy," apparently meaning the UIM benefits in Defendant's policy. The other letter sent on that date asked whether Defendant would agree to Plaintiff accepting the settlement from the other driver.

On May 2, 2019, Defendant consented to Plaintiff's settlement with the other driver's insurance company. On June 19, 2019, Defendant sent Plaintiff's counsel a letter acknowledging "your demand letter of 4/25/19 received on 6/19/19" and stating that it was "currently in the process of evaluating your demand" and once the "evaluation is complete, we will contact you to discuss settlement or request additional information."

The next correspondence between Plaintiff's counsel and Defendant apparently occurred months later on November 4, 2019, when Plaintiff's counsel sent Defendant a letter with a medical expense summary, stating, "We once again renew the demand for the full value of her underinsured motorist benefits as her medical expenses greatly exceed that figure." On November 12, 2019, Defendant acknowledged the November 4 demand letter, sought confirmation it was in possession of all Plaintiff's bills, indicated it was in the process of evaluating the demand, and advised it would be in contact to discuss settlement or request additional information.

On November 18, 2019, Plaintiff's counsel sent Defendant another letter stating that Plaintiff's damages greatly exceeded the other driver's insurance policy limits combined with the UIM benefits. Plaintiff's counsel also stated, "If you disagree with that position, I would appreciate understanding why as we are approaching the time necessary to file suit." But the parties dispute whether this statement accurately reflects the applicable statute of limitations. Defendant responded on November 26, 2019, stating that it would answer Plaintiff's demands "in the next couple of days."

On December 6, 2019, Defendant sent a letter to Plaintiff's counsel stating it neither accepted nor denied Plaintiff's demand. Instead, Defendant requested additional medical records, including records for the three years before the accident and any medical records related to prior shoulder or knee surgeries and any back/spine treatment. It enclosed a medical authorization form for Plaintiff to sign. Defendant contends the requested additional information was necessary for evaluating Plaintiff's claim for UIM benefits because Plaintiff's records indicated she may have had preexisting conditions that raised questions regarding causation and damages. Plaintiff denies this fact but does not point to any evidence in the record supporting this position. *See* D. Kan. Rule 56.1(b)(1) (noting that each fact in dispute must "refer with particularity to those portions of the record upon which the opposing party relies"); *see also* Fed. R. Civ. P. 56(c), (e).

On December 10, 2019, Plaintiff filed this lawsuit alleging breach of contract because Defendant refused to pay UIM benefits under the policy. *See* Doc. 62 at 4. Plaintiff and her counsel did not respond to Defendant's December 6 request before filing suit. Plaintiff did not provide any of the requested additional medical records nor execute the authorization before filing suit. But Defendant did obtain the authorization in the course of discovery in this litigation.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567,

569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Defendant seeks summary judgment on Plaintiff's breach-of-contract claim on grounds that it is entitled to deny coverage because Plaintiff violated her duties under the policy to Defendant's detriment. Under Kansas law, a breach-of-contract claim requires a showing of the following elements: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006) (emphasis added).

Insurance contracts often impose post-loss "duties of cooperation" on insured parties. *Geer v. Eby*, 432 P.3d 1001, 1010 (Kan. 2019). These duties "stem[] from the insurer's information disadvantage." *Id.* In Kansas, "an insurer is relieved from liability under an insurance contract only if a breach of the cooperation clause causes substantial prejudice to the insurer's ability to defend itself." *Youell v. Grimes*, 217 F. Supp. 2d 1167, 1174 (D. Kan. 2002); *see also Boone v. Lowry*, 657 P.2d 64, 70 (Kan. Ct. App. 1983). Accordingly, the Court considers whether Plaintiff failed to satisfy her duties under the policy and, if so, whether Plaintiff's conduct prejudiced Defendant.

### A.   Plaintiff's Duties Under the Policy

The first issue is whether Plaintiff failed to comply with the duties imposed on her under the policy. In Kansas, insurance policies are contracts, and their interpretation is a question of law. *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015). Courts should "consider the

policy as a whole, rather than viewing provisions in isolation." *Id.* Where the language is unambiguous, a court should enforce the contract as made. *Id.*

On the issue of whether Plaintiff breached her duties under the policy, Defendant primarily focuses on Plaintiff's failure to assist Defendant in securing evidence in the form of providing authorizations for release of medical records and bills and on her filing of this lawsuit before she complied with all policy provisions.[3] The relevant policy language cited by Defendant required Plaintiff to "cooperate with us and, when asked, assist us in . . . securing and giving evidence . . . ." Doc. 67-1 at 28 (italics omitted). The policy also obligated Plaintiff to "provide written authorization" for Defendant to obtain medical bills and medical records. *Id.* at 29. Further, no legal action could be initiated until there had been full compliance with all the provisions of the policy. *Id.* at 33.

It is undisputed that Defendant requested that Plaintiff provide additional medical records beyond what had already been provided and execute authorizations for medical records. Defendant needed this additional information because the records provided had indicated Plaintiff may have had preexisting conditions that raised questions regarding causation and damages. It is further undisputed that Plaintiff did not provide this information before she filed this lawsuit. Given these undisputed facts and the unambiguous terms of the policy, no reasonable jury could conclude that Plaintiff complied with her duties under the policy. *See Doerr v. Allstate Ins. Co.*, 121 F. App'x 638, 640 (6th Cir. 2005) ("A court . . . may decide the cooperation clause issue as a matter of law where the facts are undisputed."); *Goddard v. State Farm Mut. Auto. Ins. Co.*, 992 F. Supp. 2d

---

[3]   Defendant additionally argues that Plaintiff failed to attempt to come to an agreement under the "Deciding Fault and Amount" provision. *See* Doc. 67-1 at 18. But Defendant does not elaborate on what this provision actually required of Plaintiff or how she failed to comply. Plaintiff largely ignores this provision altogether. Accordingly, the Court focuses its analysis on Defendant's arguments about other provisions in the policy.

473, 479 (E.D. Pa. 2014) (stating that, where lack of cooperation is conclusively established, it may be determined as a matter of law).[4]

Plaintiff argues that the policy did not require her to provide medical authorizations <u>before</u> filing suit, apparently relying on the fact that authorizations were eventually executed during discovery in this litigation. But the unambiguous language of the policy indicates otherwise. Although the specific provision requiring Plaintiff to assist in securing evidence and to provide written authorizations does not state when this must occur, the "GENERAL TERMS" section clearly and unambiguously states, "Legal action may not be brought against us until there has been full compliance with <u>all the provisions of this policy</u>." Doc. 67-1 at 33 (emphasis added). Notably, Plaintiff does not argue that the policy is ambiguous in this regard. Plaintiff ignores the "GENERAL TERMS" provision altogether. But by its plain terms, when read together, *see BancInsure*, 796 F.3d at 1233, Plaintiff was obligated under the policy to cooperate with Defendant in giving and securing evidence and to provide written authorizations, and she was not permitted to initiate legal action until she had done so. It is undisputed that Plaintiff did not provide the requested information until <u>after</u> legal action was instituted, as part of discovery. This was in violation of her obligations under the policy.

Plaintiff argues there are questions of fact about whether <u>Defendant</u> meaningfully cooperated with Plaintiff in attempting to resolve the claim, including "refusing to work with Plaintiff's counsel" and unreasonably delaying requesting authorizations until shortly before the expiration of the "potential" statute of limitations. Doc. 68 at 6-8. To the extent this could absolve Plaintiff of her duty to cooperate, *see Youell*, 217 F. Supp. 2d at 1176 ("The court found no case

---

[4]    To the extent the Court relies on cases not applying Kansas law, the Court notes that these cases apply law that is functionally similar to Kansas law.

law suggesting that if an insurer falls short in executing any of its obligations, such as the duty to investigate, the shortfall will relieve the insured of its obligation to cooperate."), the record does not factually support these allegations. The undisputed facts show that the parties exchanged some cursory correspondence in the early part of 2019, at which point it was unclear whether Plaintiff was making a claim under the policy.[5] When Plaintiff more definitively did assert a claim in November 2019, Defendant responded within about a month and requested additional information. Plaintiff did not provide the requested information and instead filed this case a few days later. This does not demonstrate any genuine issue of fact about whether <u>Defendant</u> cooperated. At best, it shows that the parties were attempting to resolve the claim when Plaintiff unilaterally ended the discussion by filing this case.

Plaintiff claims she had no choice but to file suit because the "potential" statute of limitations was about to expire. But she cites no authority to support that contention, nor any authority supporting her view of what the "potential" statute of limitations is in this case. As Defendant points out, the statute of limitation for breach-of-contract claims—the only claim asserted by Plaintiff—is five years. *See* K.S.A. § 60-511(1). Given that the accident in this case occurred in January 2018, it is unclear what "potential" statute-of-limitations pressure Plaintiff was facing that could justify her failure to cooperate under the policy.

Accordingly, the Court finds that, on the undisputed facts, Plaintiff failed to comply with her duties under the policy.

---

[5]   The April 2019 letter from Plaintiff's counsel stated, "as soon as my client finishes treating, <u>we will be</u> making a claim against that policy." Doc. 67-5. But correspondence in response by Defendant referenced a demand by Plaintiff. Doc. 67-8.

### B.      Prejudice to Defendant

Defendant argues Plaintiff's actions prejudiced it because Plaintiff denied it information relevant to causation and damages and put Defendant "in the untenable position of either denying coverage or paying the claim without the means to investigate its validity," and Defendant could not "meaningfully evaluate [Plaintiff's] claim" before Defendant "was forced into costly litigation." Doc. 67 at 16.

Where an insured's failure to cooperate prevents an insurance company from determining the extent and cause of injuries, prejudice may be found. *See Goddard*, 992 F. Supp. 2d at 479. Further, "[i]f the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist." *Walker v. State Farm Fire & Cas. Co.*, 2017 WL 1386341, at *4 (D. Colo. 2017) (quoting 1 Allan D. Windt, Insurance Claims & Disputes § 3.2 (6th ed. 2016)); *see also Bryant v. Sagamore Ins. Co.*, 597 F. App'x 968, 973-74 (10th Cir. 2015) ("Because Kelly's policy excluded coverage for non-permissive use, Sagamore demonstrated that it was prejudiced, at a minimum, by its inability to investigate this issue."); *Cribari v. Allstate Fire & Cas. Ins. Co.*, 2021 WL 2255008, at *6 (10th Cir. 2021) ("Often, the prejudice from a failure to cooperate manifests in the insurer's failure to complete an investigation."). If it is undisputed that an insured party failed to provide requested records and those records are relevant to the insurer's investigation, prejudice may be found. *See Walker*, 2017 WL 1386341, at *4.

The undisputed facts demonstrate that, after Plaintiff made her claim, Defendant had concerns that some of the damages Plaintiff was claiming were related to pre-existing conditions. Accordingly, it requested additional medical records and authorizations that would allow it to investigate causation and damages. Plaintiff filed this lawsuit instead of providing this information.

On these undisputed facts, the Court finds that Plaintiff's failure to cooperate prejudiced Defendant. An insurer is entitled to secure information to permit a reasonable investigation so that it can decide whether to pay or deny a claim. Plaintiff's actions prevented Defendant from doing that. *See Goddard*, 992 F. Supp. 2d at 479 (finding prejudice where the insurer was "denied the opportunity to evaluate the state of [the insured's] health at the time of his claim [and] to determine whether all of the conditions for which he sought treatment resulted from the accident");[6] *Doerr*, 121 F. App'x at 641-42 ("Without the requested documentary evidence, . . . Allstate was unable to complete a full and fair investigation of the arson.").

To the extent Plaintiff contends that Defendant was not prejudiced because it was able to eventually get the authorizations and other information in the course of litigation, this ignores the fact that Plaintiff agreed to cooperate <u>before</u> she filed a lawsuit, and in failing to do so, prevented Defendant from avoiding litigation altogether. If an insured could simply ignore her duties under an insurance policy, proceed straight to court, and then alleviate any prejudice through compliance with the otherwise obligatory rules of civil procedure, it would render much of an insured's obligations under a policy inconsequential.

Plaintiff also complains that Defendant delayed in bringing this motion, which is based entirely on events that occurred before the case was filed, and thus Defendant's claim of prejudice resulting from costly litigation is without merit. To the extent Plaintiff contends Defendant could

---

[6] Plaintiff attempts to distinguish *Goddard* by stating it involved an insured's refusal to submit to a medical examination during the pendency of litigation. Doc. 68 at 9-10. Plaintiff does not cite any support for this contention and those are not the facts of that case. *See Goddard*, 992 F. Supp. 2d at 475-76 (detailing the insured's refusal to submit to an independent medical evaluation between 1998 and 2007 and stating that the suit was filed in 2011). Plaintiff makes a similar argument about the facts of *Bennett v. State Farm Mutual Automobile Insurance Co.*, stating that it involved an insured who failed to submit to an examination under oath during the pendency of the litigation. Doc. 68 at 9. Again, that is not what occurred in *Bennett*, where the Kansas Court of Appeals affirmed a grant of summary judgment to an insurer because an owner of a stolen car did not submit to a hearing under oath as required by the policy. This occurred before the case was filed. *See* 2003 WL 22479591, at *1-3 (Kan. Ct. App. 2003).

or should have made this motion sooner, this argument does not alleviate the prejudice to Defendant. Again, the prejudice to Defendant stems from its inability—because of Plaintiff's actions—to investigate and resolve the claim before a lawsuit was filed, not simply at an earlier stage of the case. *See Cribari*, 2021 WL 2255008, at *8 (finding prejudice where a failure to cooperate forced an insurer to defend a bad-faith suit).

Plaintiff also notes that Defendant never gave Plaintiff or her counsel notice that they failed to meet any obligation under the policy. Doc. 68 at 9. To the extent Plaintiff contends Defendant was required to give notice of her failure to cooperate before Plaintiff filed suit, *see id.* at 3, this would not have been possible because Plaintiff failed to cooperate by filing this case just days after Defendant requested additional medical records and authorizations. In other words, Defendant learned of Plaintiff's failure to cooperate when Plaintiff sued Defendant. Defendant cannot give notice of something before it happens.

To the extent Plaintiff claims Defendant never gave notice in this litigation that it intended to allege Plaintiff failed to cooperate, that is incorrect. Defendant raised this defense in its answer, Doc. 7 at 3-4, and in the pretrial order, Doc. 62 at 4, which is sufficient. *See Cribari*, 2021 WL 2255008, at *8 ("The prejudice from Plaintiff's failure to cooperate did not arise until Plaintiff filed the suit. And at that point, Defendant could not possibly give Plaintiff a chance to cure. The only possible way to provide notice after suit is to respond in a pleading."); *see also Goddard*, 992 F. Supp. 2d at 480 (rejecting argument by a plaintiff that the defendant should be estopped from making the defense of failure to cooperate because the defendant litigated the case for years without taking any further steps to secure an independent medical examination).

Accordingly, because Plaintiff's failure to cooperate prevented Defendant from investigating Plaintiff's claim, Plaintiff's failure to cooperate prejudiced Defendant.

IV.     **CONCLUSION**

The policy required Plaintiff to cooperate before filing suit. She did not. And that failure prejudiced Defendant. Defendant is entitled to summary judgment.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 66) is GRANTED. The Clerk shall enter judgment in favor of Defendant. This case is closed.

IT IS SO ORDERED.

Dated: August 13, 2021                            */s/ Holly L. Teeter*
                                                  HOLLY L. TEETER
                                                  UNITED STATES DISTRICT JUDGE